UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTIE MAGI,

       Plaintiff,

  v.                                            19-CV-1535 (JLS)

UNITED MERCHANT ASSET
RECOVERY OF WNY, LLC and V&R
RECOVERY, INC.,

       Defendants.
_____

## DECISION AND ORDER

This is an action arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Plaintiff Christie Magi filed the Complaint on November 13, 2019. Dkt. 1. She served Defendant United Merchant Asset Recovery of WNY, LLC ("UMAR") on November 18, 2019. *See* Dkt. 3. The clerk entered default as to UMAR on January 15, 2020. Dkt. 5. UMAR has failed to answer or otherwise respond to the Complaint.

For good cause shown, this Court hereby grants Plaintiff's Motion for Default Judgment (Dkt. 6) against UMAR in the amount of $6,023.64 for violations of the FDCPA. The judgment represents $1,000 in statutory damages, $1,106.64 in actual damages, $2,000 in actual noneconomic damages, $1,517 in attorney's fees and expenses, and $400 in court costs. Plaintiff's motion to dismiss V&R Recovery, Inc.

("V&R") from the action is granted, and V&R is hereby dismissed pursuant to Fed. R. Civ. P. 41(a)(2).

## BACKGROUND

According to the Complaint, Plaintiff defaulted on a car loan account (the "Account") used for the purchase of a personal vehicle. Dkt. 1 at ¶ 15. As set forth in Plaintiff's Motion for Default Judgment, Plaintiff voluntarily allowed the vehicle to be repossessed in or about 2010. Dkt. 6-1 at ¶ 2. The Account was eventually purchased by UMAR and outsourced for collection to V&R. Dkt. 1 at ¶¶ 15-17.

In or about 2018, Plaintiff began receiving threatening phone calls about the Account. Dkt. 6-1 at ¶¶ 2, 5. The calls persisted for approximately a year and a half. *Id.* at ¶ 6. During the calls, Plaintiff was threatened with lawsuits and process servers. *Id.* at ¶ 8; Dkt. 1 at ¶ 18. Plaintiff was told that her employer would be contacted, as well as the "local authorities." Dkt. 6-1 at ¶ 9.

From approximately January 2019 to March 2019, Plaintiff received ten to fifteen calls on her cell phone per week regarding the Account. *Id.* at ¶ 7. Plaintiff experienced stress, anxiety, and nausea related to the calls and began taking Tylenol for headaches. *Id.* at ¶¶ 10, 13. Plaintiff lost sleep because of the calls and woke up "constantly" at night. *Id.* at ¶ 11. Plaintiff later learned that family members were also contacted in connection with the Account, creating added anxiety. *Id.* at ¶¶ 20-22.

Fearing arrest or suit, Plaintiff made payments on the Account because she was not aware that the debt was beyond the statute of limitations. *Id.* at ¶¶ 14, 15-

18; Dkt. 1 at ¶ 20. UMAR participated in three of these transactions, which totaled $1,106.64. Dkt. 6-1 at ¶ 17. UMAR has not denied the allegations in Plaintiff's Complaint, and the allegations are therefore deemed admitted for purposes of this default judgment.

## DISCUSSION

### I. DEFAULT JUDGMENT

To secure a default judgment under Rule 55(b), a party must first secure the clerk's entry of default by demonstrating, by affidavit or some other means, that the opposing party is in default. *See* Fed. R. Civ. P. 55(a); *see also Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Journee Constr., Inc.*, 305 F. Supp. 3d 444, 446 (W.D.N.Y. 2018) (citations omitted). Once default is entered, the allegations of the complaint establishing the defendants' liability are accepted as true, except for those relating to the amount of damages. *See Buffalo Laborers Welfare Fund v. H & M Plumbing and Mech. Contracting Inc.*, No. 14-CV-960S, 2015 WL 1735198, at *1 (W.D.N.Y. Apr. 16, 2015) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Annis v. Eastern Asset Mgmt., LLC*, No. 08-CV-458S, 2010 WL 1035273, at *3 (W.D.N.Y. Mar. 18, 2010).

In considering a default judgment under Rule 55(b), however, the Court must still determine whether the complaint's well-pleaded allegations state a claim upon which relief can be granted. *See, e.g., Madden v. Bewley*, No. 16-CV-00571, 2017 WL 222245, at *2 (W.D.N.Y. Jan. 18, 2017) (quoting *Granite Music Corp. v. Ctr. St.*

*Smoke House, Inc.*, 786 F. Supp. 2d 716, 726 (W.D.N.Y. 2011)). Once a defendant's liability is established by entry of a default judgment, the only remaining question is whether there is "adequate evidentiary support" for the damages sought. *See id.* (quoting *Granite Music Corp.*, 786 F. Supp. 2d at 726); *see also Greyhound*, 973 F.2d at 158.

In this case, the Clerk has entered default (Dkt. 5), and Plaintiff's allegations are sufficient to establish liability under the FDCPA as specified in the Complaint. *See, e.g., Flores v. RMA Recovery Grp.*, No. 17-CV-402, 2021 WL 1572508, at *3 (W.D.N.Y. Apr. 22, 2021) (articulating the elements of an FDCPA claim); *see also In re Scott*, 572 B.R. 492, 541 (S.D.N.Y. 2017) (noting that "entities that meet the FDCPA's definition of 'debt collector' may be held vicariously liable for the wrongful collection activity of another carried on for its behalf"); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-16 (S.D.N.Y. 2013) (same). Thus, default judgment is appropriate.

## II. RELIEF

Even though a "party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability," the default "is not considered an admission of damages." *Greyhound*, 973 F.2d at 158. The court "has an independent obligation to assess requests for damages, which 'usually must be established by the plaintiff in an evidentiary hearing.'" *Finkel v. Robco Elec. Corp.*, No. 11-CV-2353 (NGG) (RLM), 2011 WL 3204603, at *2 (E.D.N.Y. July 27, 2011) (quoting *Greyhound*, 973 F.2d at 158); *see* Fed. R. Civ. P. 55(b)(2) (stating that the court may conduct

hearings to determine damages). The Second Circuit has allowed damages determinations without a hearing where detailed affidavits and documentary evidence provide the court with a sufficient basis for assessing damages. *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); and then citing *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 349 (E.D.N.Y. 2009)). Damages need not be proven if they are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence offered are drawn in the moving party's favor. *Au Bon Pain Corp.*, 653 F.2d at 65; *see also Annis*, 2010 WL 1035273, at *3.

Based on the uncontested allegations in the Complaint (Dkt. 1) and Plaintiff's sworn statements in her declaration (Dkt. 6-1), the Court awards Plaintiff $1,000 in statutory damages under the FDCPA pursuant to 15 U.S.C. 1692k(a)(2)(A). The amount of statutory damages, not to exceed $1,000, falls within the court's discretion. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998). Factors to be considered in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance and the extent to which the noncompliance was intentional. *Id.*, *see also* 15 U.S.C. 1692k(b)(1). Here, Plaintiff's declaration demonstrates a pattern of intentional misconduct by Defendant designed to threaten her. Dkt. 6-1 at ¶¶ 5-9. The conduct persisted for over a year, and the nature of Defendant's noncompliance was intentional. *Id.*

5

Further, the damages Plaintiff suffered, including increased anxiety and sleep disruption, are similar to the damages Congress sought to remedy when it passed the FDCPA. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."). Thus, the Court awards Plaintiff the full $1,000 in statutory damages provided under 15 U.S.C. § 1692k(a)(2)(A). *See, e.g., Baruch v. Healthcare Receivable Mgmt.*, No. 05-CV-5392, 2007 WL 3232090, at *4 (E.D.N.Y. Oct. 30, 2007) (awarding $1,000 for egregious violations); *Annis*, 2010 WL 1035273, at *5 (same).

In addition to statutory damages, a prevailing plaintiff in a FDCPA suit may recover actual damages for emotional distress. *Mira v. Maximum Recovery Sols., Inc.*, No. 11-CV-1009, 2012 WL 4511623, at *3 (E.D.N.Y. Aug. 31, 2012). Actual damages are designed to compensate for any "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." *Id.* (citation omitted). A plaintiff may rely on his or her own testimony to establish actual damages, but he or she "'must explain the circumstances of . . . injury in reasonable detail,' and may not 'rely on conclusory statements' unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 976 (N.D. Ohio 2008).

In the Second Circuit, "[t]here are relatively few benchmarks for the awarding of actual damages under the FDCPA for allegations of emotional distress." *Baruch,* 2007 WL 3232090, at *3 (identifying awards ranging from $1,000 to $5,000). Courts in this district have granted awards of actual damages even in the absence of supporting medical evidence. *See, e.g., Mira,* 2012 WL 4511623 at *1, 3 (awarding $1,000 where plaintiff complained of emotional distress that she attributed to the phone calls and deceptive messages received from the defendant debt collector); *see also Pearce v. Ethical Asset Mgmt., Inc.,* No. 07–CV–718S, 2010 WL 932597, at *5 (awarding a total of $1,829 in actual damages to two FDCPA plaintiffs who claimed embarrassment, fear, and humiliation).

This Court, having reviewed Plaintiff's declaration and the uncontested allegations in the Complaint, is satisfied that Defendant engaged in "inherently degrading" activity such that an award of actual damages is warranted. Further, as evidenced by Plaintiff's declaration, Plaintiff suffered increased anxiety, nausea, headaches, and a loss of sleep as a result of Defendant's conduct. Dkt. 6-1 at ¶¶ 10-13. These types of damages are among those for which Congress intended to provide a remedy when it passed the FDCPA. *See* 15 U.S.C. § 1692(a). Although Plaintiff's request for $5,000 is excessive, the Court finds that she did suffer some emotional distress, and awards $2,000 in actual damages commensurate with the evidence in this case. *See Annis,* 2010 WL 1035273, at *6 (finding damages claims of $5,000 and $3,000 excessive where plaintiffs did not submit medical evidence in support of their emotional distress claims).

The Court further awards Plaintiff the sum of $1,517 in attorney's fees and expenses and another $400 in court costs. The FDCPA provides for the recovery of reasonable attorney's fees and costs for prevailing parties. *See* 15 U.S.C. § 1692k(a)(3). The Court has reviewed the declaration of Plaintiff's counsel and finds the request for fees and expenses to be reasonable. Therefore, the Court enters a default judgment in Plaintiff's favor in the amount of $6,023.64.

## CONCLUSION

Plaintiff's Motion for Default Judgment against UMAR (Dkt. 6) is GRANTED, and V&R is dismissed from the action without prejudice. The Court enters a default judgment in Plaintiff's favor in the amount of $6,023.64, representing $1,000 in statutory damages, $1,106.64 in actual damages, $2,000 in actual noneconomic damages, $1,517 in fees and expenses, and $400 in court costs. SO ORDERED.

DATED:   June 1, 2021
         Buffalo, NY

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE